INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY ET AL. V. S. P. JONES

Decided January 10, 1906.

**1.—Railway—Live Stock Shipment—Contract—Action.**

The purchaser of cattle to be delivered f. o. b. cars at a station in Texas for transportation to destination in the Indian Territory, where he was to pay for only such as were there turned out of the cars, could upon receiving and paying for them maintain suit against the railway companies uniting to complete such transportation, for damages caused by negligent delay in transit, though the contracts for shipment were between the seller and railway company only, he being the owner as soon as loaded and the shipment being for his benefit, though he was not named in the contract.

**2.—Same—Calves not Counted in Sale.**

The purchaser of cattle shipped him by the seller, though in his contract calves with the cows were not separately counted in estimating the contract price, which was by the head, could recover for injury to or death of the calves by negligence of the railway, which had no interest in the question of what they had cost him; the fact that some calves died in transit and not after arrival, and that the purchaser was to pay for those only delivered at destination, was immaterial, where the cows only were counted in the sale.

**3.—Railways—Connecting Lines—Pleading.**

A petition seeking recovery from three connecting lines of railroad for damages caused to a through shipment of cattle was not subject to demurrer for failing to show how much of the total damage claimed was due to the negligence of each road respectively.

**4.—Opinion Evidence—Value of and Damage to Live Stock.**

A witness familiar with cattle and their value in a stock raising country, not a cattle market where market reports were published, could give his opinion of the value of cattle there and of their relative values in good condition and a damaged condition.

**5.—Action—Compromise—Parties.**

Cattle being shipped by a seller for delivery to one purchasing f. o. b. at

point of shipment, but who was to pay only for those delivered at destination, the seller with whom the carriers had contracted in shipping them sued for damages by loss of cattle dying in transit and not delivered or paid for, and the buyer for damages to those delivered. Held, that a compromise of his suit by the seller, while both actions were pending, though it purported to satisfy all damages and suits arising out of the shipment did not affect the right of the buyer to recover in his action.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*S. R. Fisher* and *J. H. Tallichet,* for appellants.—Under the terms of the contract the sale was not complete and the title to the cattle did not pass to Jones until the cattle "in good healthy condition and free from blemishes, were counted out to said Jones at the unloading point in the Indian Territory." Cleveland v. Williams, 29 Texas, 204; Allen & Bro. v. Melton, 64 Texas, 218; Goldberg v. Bussey, 47 S. W. Rep., 49; Johnson v. State, 13 S. W. Rep., 651; Coplay Iron Co. v. Pope, 108 N. Y., 232; Doane v. Dunham, 65 Ill., 513; Anderson v. Crisp, 5 Wash., 178, 31 Pac. Rep., 638; Schreyer v. Kimball Lumber Co., 4 C. C. A., 547, 54 Fed. Rep., 603.

The title to the cattle remained in Holmes and they were at his risk of loss or damage until actually received by Jones at Tulsa. The court therefore erred in holding that Jones was entitled to recover herein. Cudahy Packing Co. v. Dorsey, 63 S. W. Rep., 548; Farmers' & M. Nat. Bank v. Logan, 74 N. Y., 574-578; Ward v. Taylor, 56 Ill., 494; Dows v. Nat. Exch. Bank, 91 U. S., 631, 632; Nat. Bank of C. v. Bayley, 115 Mass., 228.

It being expressly stipulated that all death loss in shipping was to be borne by Holmes, it would appear, conversely, that the property to said cattle was in Holmes while they were in course of transportation, and until they were counted out of the cars to Jones at Tulsa. Holmes having been the owner of the cattle for alleged damage to which plaintiff sues, at the time when they were in course of transportation by defendants, and until they were delivered to Jones at Tulsa, his release was a complete bar to any suit instituted by Jones or any subsequent purchaser of the cattle. Even if Jones was in fact the absolute owner of the cattle during the course of their transportation, Holmes had the right equally with Jones to sue for and recover damages for loss and injury sustained by said cattle, and for the same reason to settle, compromise and release any and all claims for damages thereto. Missouri Pac. Ry. Co. v. Smith, 84 Texas, 351; Parks v. Gulf, C. & S. F. Ry. Co., 30 S. W. Rep., 708; Galveston, H. & S. A. Ry. Co. v. Barnett, 26 S. W. Rep., 783; Texas & P. Ry. Co. v. Klepper, 24 S. W. Rep., 568.

Even under plaintiff's theory of the case, Holmes was the agent of Jones, his undisclosed principal, for whom he contracted in his own name and as if for his own sole benefit, both in making the shipment of cattle and in settling and executing the release for the alleged damage thereto. And defendants having paid said Holmes for all damage suffered by said cattle, and Holmes having released defendants from any and all liability for loss of damage to said cattle, plaintiff's remedy

is against Holmes, who is not claimed to be insolvent, and not against defendants. Same authorities.

The court erred in permitting the witness Martin to testify as to the market value of the cattle. Texas & P. Ry. Co. v. Crowley, 86 S. W. Rep., 342; Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300.

The court erred in permitting the plaintiff, S. P. Jones, to testify as to what was the market value of the cattle, involved herein at the time of their delivery at Tulsa, and what would have been the market value of similar cattle if transported and delivered with ordinary care and in a reasonable time, because the evidence not only failed to show that said witness was qualified to give such testimony, but on the contrary did show that he was not so qualified, that he was not at or near Tulsa for more than a month after the arrival of the cattle there, that there were no market reports published showing the market at Tulsa, and that his testimony as to said matters was hearsay. Texas & P. Ry. Co. v. Crowley, 86 S. W. Rep.; 342; Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300.

A written instrument, plain, explicit and unambiguous in its terms can not be construed or varied by parol testimony, and the court therefore erred in admitting the evidence referred to in the foregoing assignments, which tended to vary the release executed by Holmes. Johnson v. Morton, 67 S. W. Rep., 790; Faires v. Cockerell, 88 Texas, 431.

The court erred in finding that the live stock contracts were for the use and benefit of Jones, because said contracts on their face showed that they were between Holmes and defendants, and that Jones was an absolute stranger thereto.

*A. B. Storey* and *Terrell, Hopkins & Terrell,* for appellee.

FISHER, Chief Justice.—This is a suit by Jones against the International & Great Northern Railroad Company, the Gulf, Colorado & Santa Fe Railway Company, and the St. Louis & San Francisco Railway Company, to recover damages in the sum of $6,252, for injuries alleged to have been sustained by a shipment of twenty-five cars of stock cattle from Millett, Texas, to Tulsa, Indian Territory.

The case was tried before the court and judgment rendered in appellee's favor against the International & Great Northern Railroad Company for $250; against the Gulf, Colorado & Santa Fe Railway Company for $2,331.36, and against the St. Louis & San Francisco Railway Company for $2,331.36. The trial court filed conclusions of fact and law, against which many objections are urged. A close inspection of the facts in the record leads to the conclusion that the facts as found are in substantial accord with the evidence. The findings are as follows:

"1. The plaintiff did purchase from H. B. Holmes certain cattle by contract in writing, dated March 29, 1902, which cattle were to be delivered at Millett to said plaintiff f. o. b. on cars. Said cattle were delivered to plaintiff according to said contract on board cars at Millett, April, 1902. By the terms of said contract, plaintiff was to pay Holmes for only such cattle as were turned out of the cars at the unloading point in the Indian Territory.

"2. Of these cattle so purchased by plaintiff a certain number were shipped from Millett, Texas, to Tulsa, Indian Territory, April 12, 1902, over the connecting lines of these defendants, the International & G. N. Ry. Co. being the initial line of railway, which company issued to H. B. Holmes, who paid the whole freight to point of destination on said shipment was for the use and benefit of the plaintiff.

"3. Certain of these cattle were killed en route and therefore were not paid for by plaintiff, nor turned out of the cars for him.

"4. After this suit of Holmes was filed, the present plaintiff brought suit for damages to the remainder of said animals in said shipment.

"5. Holmes compromised his suit with defendants, but after this suit of this plaintiff was instituted and service procured, and after defendants have answered fully in this suit through the same attorneys.

"6. The written compromise with Holmes did recite it was for all the damage of all suits to the animals in said shipment, as well as for all dead ones.

"7. The pleadings in the Holmes suit all showed only the dead animals of said shipment and their value was sued for. This plaintiff (Jones) was no party to said suit compromised nor received any part of the proceeds.

"8. Plaintiff paid Holmes for all the cattle in said shipment, except those animals so killed in said shipment, and paid Holmes the freight of said shipment.

"9. There were six hundred and fifty-nine head of cows and fifty-seven head of calves actually turned out of the cars at Tulsa, Indian Territory. There were three head of calves died at Tulsa as they were delivered.

"10. There were about ninety-two hours occupied in said shipment.

"11. There were unreasonable delays by all the defendants in said shipment, which constituted negligence by them respectively.

"12. These unreasonable delays of these several defendants in said shipment are as follows: By the International & G. N. Ry. Co., 5 hours; by the Gulf, C. & S. F. Ry. Co., 9 hours; by the San Francisco Ry. Co., 27 hours. Besides, the Gulf, C. & S. F. Ry. kept said cattle in the pens of the company at Cleburne, Texas, several hours knee deep in mud.

"13. That these acts of negligence proximately and directly caused injury to said cattle, as follows: which represents the difference in the market value of said animals at Tulsa at the time of delivery there, had they been transported in a reasonable time, and the time they were actually delivered:

"14.    659 cows at $6 per head........................$3,945.00
        57 head calves at $4 per head.................... 228.00
        3 dead calves at $5 per head.................... 15.00

#### CONCLUSIONS OF LAW.

"1. The delivery of said cattle by Holmes to plaintiff was at Millett, Texas, f. o. b. cars and he then became owner thereof.

"2. The bill of lading of said shipment of cattle was for the benefit of plaintiff.

"3. That suit of Holmes for the dead cows in the shipment and the settlement thereof with these defendants in no wise affected this plaintiff.

"4. That this suit was properly brought by this plaintiff, Jones, and he is entitled to recover in this suit the sum of the several sums as before stated in the findings of fact, with 6 percent interest from May 1, 1902.

"5. This amount to be recovered is distributed as follows:

Against the I. & G. N. Ry. Co.................$ 250.00  
"       "    G. C. & S. F. Ry. Co................ 2331.36  
"       "    St. L. & S. F. Ry. Co.............. 2331.36  

Judgment accordingly."

What has been said disposes of all those assignments that are directed against the findings of fact as not supported by the evidence; but in passing we will notice some objections that are raised by some of the assignments.

The eighteenth assignment complains of the fifth paragraph of the findings of fact, wherein the court states that the suit of Holmes was compromised with defendants after the suit of the plaintiff was instituted, and service procured, and after defendants had fully answered in the suit through the same attorneys. This finding is substantially in accord with the testimony. The same attorneys that represented the appellants in the suit by Holmes also represented the railway companies in this case; and the settlement of the Holmes controversy was through those attorneys. All of the railway companies were properly served, and were in court in this case at the time of the settlement of the suit of Holmes against the appellants. And the two first railway companies named had at that time filed general demurrers and general denials. The last railway company named, the St. Louis & San Francisco, had filed a motion to quash citation. The mere fact that this last road had not fully answered would not militate against the findings of the trial court.

The nineteenth and twentieth assignments of error complain of the findings of fact and conclusions of law based thereon, that the live stock contract executed by Holmes under which the cattle were transported to Tulsa, was for the use and benefit of Jones. While the contract itself does not upon its face disclose that Jones was a party to it, the evidence in relation thereto, in effect, shows that it was for the benefit of Jones, Jones at the time being the owner of all the cattle that were transported to Tulsa, except those that might die en route.

The twenty-first, twenty-second and twenty-third assignments of error complain of the findings that there were unreasonable delays on each of the roads. There is evidence which justifies the findings upon this subject.

The twenty-fourth assignment complains of the thirteenth and fourteenth paragraphs of the findings of fact relating to the calves. In the purchase of the cattle by Jones from Holmes, the calves were not counted, but were thrown in and went with the mother cows. The court allowed the appellee damages to fifty-seven head of the calves. The fact that these calves were not counted in the sale, and were

thrown in without cost to Jones, would not affect his right to recover damages inflicted upon them by the railway companies in their transportation. Under the contract of purchase from Holmes, Jones was the owner of the calves.

The twenty-fifth assignment of error complains of the findings of the court as to the item of $15 damages for three head of calves, which it is found by the court died at Tulsa. The appellants contend that this finding was not supported by the testimony; that the evidence shows that they died en route and not at Tulsa. The contract of purchase between Jones and Holmes provided that Jones should only pay for the number of cattle that were delivered to him at Tulsa. Those that died en route were still to remain the property of Holmes; the balance, under the contract between those two parties, became the property of Jones. If it should be admitted that the appellants are correct in their construction of the evidence that the three calves died en route and were not delivered to Jones at Tulsa, still, we are of the opinion the appellee was entitled to recover their value. These calves went with their mothers, and there is nothing in the evidence tending to show that the mother cows did not reach Tulsa, and were not there delivered to Jones. The calves were thrown in at the time of the purchase, and became the property of Jones. At least, such would be the case if their mothers reached Tulsa, and it is not pretended that the cows, the mothers of these calves, were not delivered to Jones; at least, there is no assignment of error raising the question that such delivery was not made at Tulsa.

The eighth and ninth assignments of error complain of the action of the trial court in overruling appellants' third and fourth special exceptions. These exceptions complain of the petition on the ground that it did not allege the amount of injury inflicted upon the cattle by each of the railway companies in their transportation, and did not allege what effect the acts of negligence of each railway had upon the cattle in question. The petition did allege and charge all of the appellants with negligence in transporting the cattle, and alleged the damages resulting therefrom. This, in our opinion, was sufficient. Although it be conceded as a fact that the shipper's agent accompanied the transportation of the cattle, it does not necessarily follow that he could determine just exactly when and where and upon which road the damages were inflicted, and the amount thereof. The plaintiff had no interest in the cattle that were killed, a fact that possibly could have been ascertained by the agent of the shipper that accompanied the cattle at the time of and on the railway lines that caused their death; but the damages here claimed could not well have been ascertained and determined until after the cattle reached Tulsa, because up to that time the effect of the entire transportation could not and would not possibly be fully developed. Of course, the agent accompanying the cattle might have become aware of acts of negligence of the different lines of road that likely had a tendency to cause injury. But it is not to be expected that he would be enabled to say just what would be the result produced by these acts, until a full development was reached at the point of destination.

The tenth assignment of error complains of the evidence of the

witness Martin, and the eleventh assignment complains of the evidence of the witness Jones on the subject of the market value of the cattle at Tulsa. We think the testimony objected to was properly admitted.

The twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error relate to the action of the trial court in permitting evidence affecting and explaining the compromise settlement and contract between Holmes and the appellants. Several grounds of objections are urged, but they can be disposed of by some general remarks, which will cover all the points presented by these assignments. The appellee Jones purchased the cattle from Holmes to be delivered on board of the cars at Millett station. These cattle were to be transported to the unloading point in the Indian Territory, which the evidence shows to be Tulsa; and there Jones was to pay for the live cattle that were there counted out and delivered, with the calves thrown in; but the cattle that should die en route were to be at the loss of Holmes. The cattle were delivered and received by Jones at the point of destination, less those that died, and for the injuries and damages sustained to those cattle so received, Jones brought this suit. Prior to the time of filing this suit, Holmes brought a suit in the District Court of Hays County against appellants for the value of the cattle that were killed en route and not delivered to Jones. After Jones's suit against the appellants was filed, and after service of citation upon them, and after answer filed by the two companies first named, and a motion to quash citation by the last, Holmes and the appellants entered into a written agreement of settlement of that suit. That agreement states that it is in payment and satisfaction of all sums and damages sustained by Holmes in the transportation of cattle in question. The appellee Jones was not a party to that agreement. The attorneys for the appellants that effected that compromise or agreement with Holmes, are the same attorneys that are representing the appellants in this case, and they knew of the pendency of the suit of Jones; and we must conclude that they must have known the nature and character of his suit, and the character of claim there asserted. Jones merely sued for damages sustained to the cattle that were delivered to him; and it appears that in the suit of Holmes there was no claim asserted for the same damages that Jones now claims.

The evidence objected to in these assignments substantially establishes the above facts as stated. We are of the opinion that this evidence was admissible. The contract of settlement executed by Holmes was not binding upon the appellee; and he, being a stranger thereto, could enter into the real facts, and show the terms and conditions upon which that contract was based. He was not and is not asserting any rights under that contract; and contends that that settlement did not relate to the action for damages that he was asserting by reason of the fact that he was the owner of the cattle that were delivered to him. While the verbiage of the agreement between Holmes and the railway companies shows that it embraces claims for all character of damages sustained to the cattle, the facts show that he only received payment for the number of cattle that died or were killed during the course of the transportation, and that was the extent of the claim asserted by him in his suit against the railway companies. The attorneys who

effected the settlement then acting as the agents of appellants, knew this to be the case, and knew that the suit of Jones was then pending for the damages here asserted by him. Such being the case, the railway companies are in no position to assert that when they obtained the settlement from Holmes they had no notice of the right of Jones as to damages for the cattle injured. The rule with reference to prohibiting parties to a contract, in the absence of fraud or mistake, from contradicting or explaining an unambiguous written agreement, has no application in this case, for that rule could not apply to Jones, who was a stranger to the contract.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.